1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11  MONICA SAAVEDRA,                 )  CASE NO.  CV 05-03028-MAN
                                     )
12                 Plaintiff,        )  MEMORANDUM OPINION AND ORDER
                                     )
13           v.                      )
                                     )
14  JOANNE B. BARNHART,              )
    Commissioner  of  the  Social    )
15  Security Administration,          )
                                     )
16                 Defendant.        )
    _____)

17

18

19      Plaintiff filed a complaint on April 29, 2005, seeking review of

20  the decision of the Social Security Commissioner ("Commissioner"),

21  denying her application for supplemental security income benefits

22  ("SSI").  On June 10, 2005, the parties consented to proceed before the

23  undersigned, pursuant to 28 U.S.C. § 636(c).  The parties filed a Joint

24  Stipulation on January 27, 2006, in which:  Plaintiff seeks an order

25  reversing the Commissioner's decision and awarding benefits; and

26  Defendant requests that the Commissioner's decision be affirmed.  The

27  Court has taken the parties' Joint Stipulation under submission without

28  oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

Plaintiff filed an application for SSI on May 11, 2000. (Administrative Record ("A.R.") 48-51.) Plaintiff claims to be disabled due to slow mental functioning, memory problems, speech problems, an inability to spell, and pain in her knees, ankles, and back. (A.R. 48, 57, 213.) She has past relevant work experience as a crossing guard, cleaning woman in a retirement home, dish washer, and gift-wrapper, but has had difficulty holding jobs due to her mental impairments. (A.R. 58, 70, 204-07, 247, 279-80.)

The Commissioner denied Plaintiff's claim for benefits. On November 13, 2001, Plaintiff, who was represented by counsel, appeared and testified at a hearing before Administrative Law Judge ("ALJ") Walter Fisher. (A.R. 198-228.) On February 21, 2002, ALJ Fisher affirmed the denial of benefits, and the Appeals Council denied Plaintiff's request for review of the ALJ's decision. (A.R. 14-18, 4-5.)

Plaintiff sought review of that decision in this Court (Case No. CV 03-00359 MAN). On April 12, 2004, this Court remanded the case to the Commissioner for further proceedings with respect to the issue of whether Plaintiff's impairments meet or equal Section 12.05(C) of the Listing of Impairments ("2004 Order"). (A.R. 292-307.)

On October 19, 2004, an administrative hearing was held before ALJ Mason Harrell. (A.R. 241-88.) In a February 24, 2005 decision, ALJ

1   Harrell again denied Plaintiff's request for DIB.  (A.R. 232-39.)

3                    **SUMMARY OF ADMINISTRATIVE DECISION**

5       In his February 24, 2005 decision, ALJ Harrell found that Plaintiff
6   had not engaged in substantial gainful activity since her alleged onset
7   date.  (A.R. 238.)  He found that Plaintiff's impairments of mild mental
8   retardation and expressive language disorder are "severe," but that such
9   impairments do not meet or medically equal one of the listed impairments
10  in Appendix 1, Subpart P, Regulation No. 4.  (*Id.*)  The ALJ further
11  found that the allegations of Plaintiff, her caseworker, and her husband
12  regarding her limitations were not totally credible.  (*Id.*)  He found
13  that Plaintiff was a "younger individual" as of the date of the
14  decision, and has a high school (or high school equivalent education)
15  and no transferable skills.  (A.R. 239.)  In describing Plaintiff's
16  residual functional capacity, the ALJ stated:

18       [Plaintiff] has no exertional limitations and she is able to
19       perform simple repetitive work with no more than two-to-three
20       steps of instructions, simple contact, and limited contact
21       with the public.  [Plaintiff] is limited to no more than basic
22       communication due to intellectual limitations with no jobs
23       requiring detailed explanation or communication and no jobs
24       making change as a cashier.  She must not be required to learn
25       new tasks quickly.

27  (A.R. 238.)

28                                  3

The ALJ found that Plaintiff's past relevant work as a crossing guard, maid, and gift wrapper did not require the performance of work-related activities precluded by residual functional capacity.  (A.R. 238.)  Relying upon Medical-Vocational Rule 202.20 and the testimony of a vocational expert, the ALJ found that there are a significant number of jobs in the national economy that Plaintiff could perform.[1]  (A.R. 239.)  Thus, the ALJ found that Plaintiff is not disabled within the meaning of the Social Security Act.  (*Id.*)

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if it is free from legal error and supported by substantial evidence.  *See* Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Commissioner's decision must stand if it is supported by substantial evidence and it applies the appropriate legal standards.  *See* Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  Substantial evidence is "more than a mere scintilla, but less than a preponderance."  *Id.* (internal citations and quotes omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, this Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  Desrosiers v. Sec'y of

---

[1]    Under Rule 202.20, a claimant who is a "high school graduate" or more, a "younger individual," and "unskilled" is not disabled.  20 C.F.R. Pt. 220, App. 2.

4

Health and Human Serv., 846 F.2d 573, 576 (9th Cir. 1988); *see also* Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995). This Court must uphold the Commissioner's decision if it is supported by substantial evidence and free from legal error, even when the record reasonably supports more than one rational interpretation of the evidence. *Id.* at 1041; *see also* Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Flaten v. Sec'y., 44 F.3d 1453, 1457 (9th Cir. 1995).

**DISCUSSION**

Plaintiff alleges three issues in the Joint Stipulation. First, Plaintiff contends that the ALJ should have found that her impairments meet or equal the Listing of Impairments as set forth in 20 C.F.R. Pt. 404, Subpt. P, Appx. I, § 12.05(C) for mental retardation. Second, she contends that the ALJ improperly discounted the testimony provided by Plaintiff, her case worker, and her husband regarding her limitations. Third, she contends that the ALJ erred in finding that she could return to her past relevant work. (Joint Stip. at 8.)

Although Plaintiff alleges several issues, the Court focuses on one of them, namely, the issue of whether her impairments meet or equal the Listing under Section 12.05(C), because, as discussed below, the resolution of this issue is case dispositive.

1    **A.**    <u>**The ALJ Erred In Finding That Plaintiff's Impairments Do Not Meet**</u>

2    <u>**Or Equal Section 12.05(C) Of The Listing Of Impairments**</u>**.**

3

4        The conditions contained in Appendix 1 to Subpart P of Part 404

5    ("Listing of Impairments") are considered so severe that "they are

6    irrebuttably presumed disabling, without any specific finding as to the

7    claimant's ability to perform her past relevant work or any other jobs."

8    <u>Lester v. Chater</u>, 81 F.3d 821, 828 (9th Cir. 1995).  The Listing of

9    Impairments was "designed to operate as a presumption of disability that

10    makes further inquiry unnecessary."  <u>Sullivan v. Zebley</u>, 493 U.S. 521,

11    532, 110 S. Ct. 885, 892 (1990).

12

13        Section 12.05(C) of the Listing of Impairments for mental

14    retardation provides, in relevant part:

15

16        Mental retardation refers to significantly subaverage general

17        intellectual functioning with deficits in adaptive functioning

18        initially manifested during the developmental period; *i.e.* the

19        evidence demonstrates or supports onset of the impairments

20        before age 22.  The required level of severity for this

21        disorder is met when the requirements in A, B, C, or D are

22        satisfied.

23            . . . .

24        C.  A valid verbal, performance, or full scale IQ of 60

25        through 70 and a physical or other mental impairment imposing

26        an additional and significant work-related limitation of

27

28                  6

function[.][2]


Here, in accordance with the 2004 Order, the ALJ adopted the IQ score of 70 found by Dr. Herrera. (A.R. 234.) Accordingly, Plaintiff meets the first prong of Section 12.05(C).


The second prong of Section 12.05(C) is met when a claimant has an additional physical or other mental impairment, which has an effect on a claimant's ability to perform basic work activities that is "more than slight or minimal." Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1986). As explained in the 2004 Order, an additional impairment meets this criterion where that impairment is found to be "severe." *See* Livengood v. Massanari, 2001 WL 34041862, *6 (D. Or. 2001)("Under the regulations, *a severe impairment by definition meets the second requirement of [Section 12.05(C)]* of an additional physical or mental impairment which imposes significant work-related limitation of function.")(emphasis added). Nevertheless, "a finding of severity is not required to satisfy the more than slight or minimal effect standard."[3] Fanning, 827 F.2d at 633-34 n.3.

---

[2]    There is no dispute that Plaintiff's mental retardation has existed since birth. Accordingly, Plaintiff meets the Listing criteria of having an onset of retardation prior to age 22.

[3]    "[A]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on [a claimant's] ability to work.'" Smolen, 80 F.3d at 1290 (citing Social Security Ruling 85-28; Yuckert v. Bowen, 841 F.2d 303 (9th Cir. 1988)); 20 C.F.R. § 416.921 ("[a]n impairment or combination or impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."); *see also* Bustamante v. Massanari, 262 F.3d 949, 955-56 (9th Cir. 2001)(ALJ's finding that claimant's mental impairment was not

7

In its directions with respect to evaluating Plaintiff's additional impairments on remand in the 2004 Order, the Court explained:

It is unclear whether Plaintiff's additional impairments -- arthritis, obesity, and an expressive speech disorder -- meet the second prong of Section 12.05(C). Plaintiff's expressive speech disorder could constitute an additional impairment under Section 12.05(C). *See* 20 C.F.R. § 416.1016(c)(noting that a claimant's speech or language impairment found by a pathologist, who is a medical consultant in a state agency, can serve as the basis for a disability determination). *See also* Bailey v. Apfel, 230 F.3d 1063, 1066 (8th Cir. 2000)(claimant's speech disorder qualified as an additional impairment that imposed a significant work-related limitation in addition to his mental retardation under Section 12.[0]5(c)). Dr. Herrera diagnosed Plaintiff with an expressive language disorder, and noted that Plaintiff took speech theory in grammar school. . . .

. . . .

severe was not supported by substantial evidence, because every mental health professional who examined claimant found significant mental problems). The "severity" requirement is merely "a *de minimis* screening device to dispose of groundless claims." Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001)(citing Smolen, 80 F.3d at 1290). "[A] claim may be denied at step two only if . . . a finding [that the relevant impairments are not medically severe] is *clearly established by medical evidence*." Social Security Ruling 85-28 (emphasis added).

. . .  It is necessary, therefore, to more fully develop the record regarding these additional impairments.  *See* 20 C.F.R. § 416.919a(b)(listing situations requiring a consultative examination, such as a conflict, inconsistency, ambiguity or insufficiency in the evidence); Brown v. Heckler, 713 F.2d 441, 442-43 (9th Cir. 1993)(Commissioner has an affirmative duty to develop the record, even if the claimant is represented by counsel).

As in Fanning, because the ALJ did not render any express finding as to whether Plaintiff's additional impairments were "severe," and because the record needs to be more fully developed regarding these assessments, the case must be remanded for further proceedings so that this finding is properly clarified.

(A.R. 302-04.)

On remand, the ALJ found that Plaintiff's expressive language disorder is a "severe" impairment, stating:

The undersigned finds the objective examination findings and test results of Dr. Borden and Dr. Herrera are given significant weight, but Dr. Borden's opinions regarding [the] diagnosis of [Plaintiff's] impairments and her functional ability are not consistent with the overall evidence and they are given no probative weight.  The psychological test scores

in the record consistently show significant functioning (Exhibit 2F and 4F). [Plaintiff's] poor articulation, limited vocabulary range, and verbal subtest scores, support a finding of expressive language disorder. The undersigned gives significant weight to the findings and opinions of Dr. Herrera as they are consistent with the overall medical evidence and the opinions of the medical expert. Therefore, the undersigned finds [Plaintiff] has severe impairments of an expressive language disorder and mild mental retardation. However, the undersigned finds [Plaintiff's] impairments do not keep her from functioning in a significant manner. This is also consistent with the findings and opinions of Dr. Herrera. [Plaintiff] is able to take care of her daily needs and those of her family and she is able to perform household chores with family members[4] and communicating with familiar people, the medical expert and the psychological examiners had no problems understanding [Plaintiff].

(A.R. 235.)

_____

[4]    According to testimony by Korina Watson at the October 19, 2003 hearing before ALJ Harrell, who works for the Eastern Los Angeles Regional Center as a service coordinator and has, in that capacity, provided assistance to Plaintiff in managing her home and caring for her children, Plaintiff needs assistance with basic homemaking chores, including cleaning, cooking, and washing laundry. (A.R. 272-76.)  At the November 13, 2001 hearing before ALJ Fisher, Vanessa Farfan, Plaintiff's prior Regional Center caseworker, testified that "[h]er child had some excessive absences from school and -- due to hygiene, and so we had to give her some assistance with that," following reports from the child's school.  (A.R. 226.)

However, in considering whether Plaintiff's impairments meet or equal a Listing, the ALJ stated:

> Michael Kania, a medical expert, testified after reviewing the entire medical record and hearing [Plaintiff's] testimony. Dr. Kania testified at the hearing that since May 2000, [Plaintiff] has an expressive language disorder and mild mental retardation, but these impairments do not meet or equal the requirements of listing level severity. Dr. Kania testified [Plaintiff's] expressive language disorder does not keep her from functioning in any significant manner and this order is not a psychiatric disorder. It appears to be an articulation disorder, similar to a lisp, but [Plaintiff] was able to express herself and answered appropriately when she was seen by the consultative examiner and in her testimony at the hearing. [Plaintiff] has no limitations in life from her speech disorder. [Plaintiff] may be shy around those she does not know and that may be the reason why she speaks more freely around those she knows. [The reason why s]he must have limited contact with the public is due to the public possibly having problems with [Plaintiff]. [Plaintiff's] full-scale IQ scores were 70 and above with a range of error [of] +/- 6, and the test scores appear to be valid. [Plaintiff] has mild restrictions in performing activities of daily living, mild difficulty in social functioning, concentration, persistence, and pace, and there is no evidence of repeated episodes of decompensation. The "C"

criteria are not met. [Plaintiff] is able to perform simple, repetitive work, requiring no more than two or three steps of instruction, but she is precluded from work requirements to learn new tasks quickly. [Plaintiff] has a fourth grade reading level and she must not be required to read. She has limited intellectual functioning and she must have limited contact with the public with no more than basic communication. She is precluded from working in any jobs making change as a cashier. The medical expert's testimony is considered highly probative and it is given significant weight. It is consistent with the medical evidence of record, is based on objective medical evidence, and there is no convincing reason to reject his opinion.

(A.R. 235-36.)

Here, in finding that Plaintiff's impairments did not meet or equal a Listing, the ALJ did not apply the correct legal standard in considering whether her additional impairment of an expressive language disorder meets the second prong of Section 12.05(C). As quoted above, the ALJ found that this impairment is "severe," which suffices for meeting the *de minimis* standard of the second prong. To the extent that the ALJ stated that her expressive language disorder does not limit her in a "significant manner" and she has "no limitations" arising from this disorder, these assertions do not negate his ultimate conclusion that this impairment is "severe." Furthermore, these assertions differ from the ALJ's other observations regarding the symptoms and limitations

arising from this disorder, such as her "poor articulation" and "limited vocabulary." They also conflict with Dr. Herrera's opinion, which the ALJ gave "significant weight."[5] (A.R. 235.) In addition, they are at odds with the limitations set forth in the ALJ's residual functional capacity finding (*i.e.*, "[Plaintiff] must have limited contact with the public with no more than basic communication.")[6] (A.R. 235-36.)

Accordingly, in view of the ALJ's ultimate finding that Plaintiff has a "severe" expressive language disorder, Plaintiff meets the second prong of Section 12.05(C). The ALJ's conclusion that Plaintiff's impairments do not meet or equal a Listing, and she therefore is not "disabled," constitutes reversible error.

B.   **Remand For An Award Of Benefits Is Appropriate.**

As the Ninth Circuit has repeatedly observed, when a remand for further administrative proceedings would serve no purpose, the Court

---

[5]   Specifically, the ALJ noted that Dr. Herrera found: "Plaintiff's speech was characterized by poor articulation with limited vocabulary range"; "[s]he employed basic sentences but she has trouble fully explaining herself"; and "[her] [a]rticulation and pronunciation were slightly impaired, but she could make specific wants known and relate experiences in a basic manner." (A.R. 234.)

[6]   Indeed, the ALJ provides no valid reason for suggesting that Plaintiff has no limitations arising from her expressive language disorder that impact her residual functional capacity. For instance, while he notes that she should be limited from contact with the public only because the public might have problems interacting with Plaintiff, he specifically describes her shyness and the possibility that she has difficulty communicating with strangers in the preceding sentence. (A.R. 235.)

instead should remand for an award and payment of benefits.  *See, e.g.,*
Benecke v. McCarthy, 379 F.3d 587, 593 (9th Cir. 2004); Lester, 81 F.3d
at 834.

Here, the record is fully developed and additional proceedings
would not be helpful.  As the above-described test has been satisfied,
this case should be remanded for an award of benefits.  *See, e.g.,*
Schneider v. Commissioner, 223 F.3d 968, 976 (9th Cir. 2000)(because
improperly rejected testimony indicated that the claimant's limitations
met Section 12.04 of the Listings, reversal and remand for a payment of
benefits was appropriate).

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the
Commissioner's decision denying benefits is REVERSED, and this case is
REMANDED for an award of benefits, consistent with this Memorandum
Opinion and Order.  Judgment shall be entered reversing the decision of
the Commissioner, and remanding the matter for such an award and any
further necessary administrative action, consistent with this Memorandum
Opinion and Order.

///

///

///

///

///

1    IT IS FURTHER ORDERED that the Clerk of the Court shall serve

2  copies of this Memorandum Opinion and Order and the Judgment on counsel

3  for Plaintiff and for Defendant.

4

5    **LET JUDGMENT BE ENTERED ACCORDINGLY.**

6

7  DATED: March 2, 2007

8

9                                        _____/s/_____

10                                        MARGARET A. NAGLE
                                       UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    15